

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed November 21, 2019**

**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DAVID DEWAYNE PRICE and | § | CASE NO. 19-50149-rlj13 |
| CHERYL ANN PRICE, | § | |
| Debtors | § | |

## MEMORANDUM OPINION

On September 19, 2019, the Court held a confirmation hearing on the chapter 13 plan of David and Cheryl Price, the debtors. Robert Wilson, the standing chapter 13 trustee, objects to the Prices' plan and opposes confirmation. He argues that the debtors have not proposed their chapter 13 plan in good faith under 11 U.S.C. § 1325(a)(3); the plan fails the good faith requirement because the Prices propose to keep and pay for three whole life insurance policies, an expense that is not "reasonably necessary" under the Bankruptcy Code. The amount of the monthly premium payments should, instead, be considered as disposable income and thus paid into the plan for unsecured creditors, the trustee says.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(L), and the Court has jurisdiction under 28 U.S.C. § 1334.

1

The Court approves confirmation and thus overrules the trustee's objection.

### I.

### A.

The facts are not disputed. The Prices, as joint debtors with above-median income, filed this chapter 13 case on June 21, 2019. Their budget reflects $5,255.35 of monthly take-home wage income, with an additional $964.36 per month in VA disability payments that Mr. Price receives. The Prices' Schedule J discloses the $222.25 that they pay each month for three life insurance policies. One is for Mrs. Price, Mr. Price as beneficiary, with a $30.25 monthly premium and a face value of $25,000. The second whole life insurance policy is for Mr. Price, Mrs. Price as beneficiary, with a $160 monthly premium and a face value of $100,000. The third policy is for their non-dependent son, Mr. Price as beneficiary, with a $32 monthly premium and face value of $50,000. The listed surrender or refund value for the three policies is $358.43, $556.10, and $578.33, respectively, according to the Prices' schedules. The three policies were issued in 2003.

### B.

The Prices' proposed plan pays administrative expenses, mortgage arrears, two vehicle liens, tax debt to the Internal Revenue Service (IRS), and an unsecured debt dividend. The plan estimates that unsecured creditors will receive $22,700.96 to be distributed pro rata over the life of the plan, resulting in a 31% dividend to general unsecured creditors. Doc. No. 29. The payments to unsecured creditors are based on the Prices' "projected disposable income." The Prices will make plan payments of $1,900 per month for a period of sixty months for a plan base of $114,000.00.

The Prices' projected disposable income, as calculated through completion of Form 122C-2, is $359.27 per month. *See* § 1325(b)(2). As required, the calculation incorporates the applicable IRS National and Local Standards' deductions and the Prices' income, including Mr. Price's VA disability payments. The Prices *did not* deduct their life insurance premium payments as an expense because whole life insurance does not qualify as a necessary expense under IRS guidelines.

The trustee does not assert that, under § 1325(b), the Prices have improperly determined their disposable income. He instead argues that since the Prices are *not* paying-in the $222.25 per month, their plan fails to dedicate *all* their disposable income for payments to creditors. As a result, he contends that their plan fails the good faith requirement of § 1325(a)(3).

## II.

Section 1325(a) of the Bankruptcy Code sets the requirements for confirmation of a chapter 13 plan. That the plan be proposed in good faith is one of the requirements. § 1325(a)(3). Subsection (b) of § 1325 provides that if the trustee or an unsecured creditor objects to the proposed plan, the debtor's "projected disposable income to be received in the applicable commitment period" must be used to make payments to unsecured creditors. The Code defines disposable income as the debtor's current monthly income less amounts reasonably necessary to be expended for the maintenance and support of the debtor and the debtor's dependents. § 1325(b)(2). The expenses—those that are reasonably necessary—are determined under subparagraphs (A) and (B) of § 707(b)(2) for above-median income debtors, such as the Prices. § 1325(b)(3).

In a less than concise fashion, § 707(b)(2)(A) and (B) outlines the debtor's allowable expenses, which are pegged to "applicable monthly expense amounts . . . under the National

3

Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides." § 707(b)(2)(A)(ii)(I) (There is more to it than this, but this suffices for the issues here.); *In re Gracia*, No. 18-50061, 2018 WL 3726157, at *2 (Bankr. N.D. Tex. Aug. 2, 2018).

The trustee's arguments raise two issues. The first is whether the debtors' Schedule J has any bearing on the § 1325(b) confirmation requirements. (Schedules I and J, which are required to be filed when the case is filed, reflect a debtor's actual monthly income and expenses.) The second issue is whether the Prices fail to satisfy the good faith requirement—despite their technical adherence to the statute and implementing-form Form 122C-2—by proposing a plan that fails to dedicate to creditors both the accumulated cash value of the policies *and the $222.25 per month* they pay for whole life policies.

### A.

### Disposable Income Required Under § 1325(b)

The Code both defines disposable income and tells debtors how to calculate it. If the trustee or an unsecured creditor objects to the debtor's plan, the plan must either pay unsecured debts in full or dedicate all their *projected* disposable income for payments on unsecured debts through the life of the plan. § 1325(b)(1). For above-median debtors—*see* § 1325(b)(3)—their projected disposable income is calculated on required form, Form 122C-2.

Prior to the use of Form 122C-2, as directed by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), bankruptcy courts determined a debtor's disposable income by deducting the debtor's expenses on Schedule J from income shown on Schedule I, subject to the court's review of the necessity and reasonableness of the claimed

expenses. *In re Cox*, 393 B.R. 681, 685 (Bankr. W.D. Mo. 2008). With the enactment of BAPCPA, though, Congress developed a standardized, bipartite procedure that eliminated much of the bankruptcy court's discretion in chapter 13 cases of above-median debtors. Now an above-median income chapter 13 debtor must complete Form 122C-1 and Form 122C-2. A completed Form 122C-1 calculates the debtor's current monthly income while a completed Form 122C-2 calculates the debtor's disposable income. This mechanical approach serves as a presumption of the debtor's disposable income that may be rebutted by any party (trustee or debtor) with evidence of known or virtually certain future events that might affect "projected" income. *In re Nowlin*, 576 F.3d 258, 266 (5th Cir. 2009).

The trustee suggests that joint debtors must contribute all their "actual" disposable income—rather than the form-derived amount—to their chapter 13 plan to satisfy the § 1325(b) confirmation requirements. The trustee is asking the Court to return to the pre-BAPCPA evaluation of a debtor's disposable income. This would require the Court to determine what expenses on Schedule J are reasonably necessary and direct that those that are not be "devoted to payments under the plan," even if the debtors did not include such expense as a deduction on their disposable income calculation. Doc. No. 29 at 4. The Court rejects this suggestion. The determination of disposable income under the statute "supplants the pre-BAPCPA practice of calculating debtors' reasonable expenses on a case-by-case basis." *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 65 (2011).[1] The purpose of this change was to avoid the "varying and often inconsistent" outcomes. *Id.*

---

[1] The trustee also submits that the Court should not follow the suggestion of *In re Brown* and compare the cost of term life with whole life insurance in assessing the reasonableness of the expense, because whole life insurance is *not* an allowable, reasonably necessary expense under Form 122C-2. No. 13-35593, 2014 WL 4793243 (Bankr. E.D. Wis. Sept. 24, 2014). The Court agrees that it should not follow *In re Brown*, but not for the reason stated by the trustee. The court in *In re Brown* was assessing the expenses of a below-median income chapter 13 debtor, in which the ad hoc analysis of what are reasonably necessary expenses is required in determining a debtor's disposable income. But

5

In *In re Uhlig*, the court determined that above-median income chapter 13 debtors are not required to contribute more money to their chapter 13 plans than their projected disposable income to meet the confirmation requirements of § 1325(b). 504 B.R. 916 (Bankr. E.D. Wis. 2014). The sole issue in *In re Uhlig* was whether the cash surrender value increase of a whole life policy over the life of the plan should be considered disposable income to be paid as an additional dividend to unsecured creditors. The court rejected the trustee's argument: "The Bankruptcy Code does not prohibit debtors from saving money during their plan or paying for a type of insurance for which their 'disposable income' equation provides no deduction from income, as long as the debtors' plan proposes to pay no less than their 'disposable income' as determined by section 1325(b)(2)." *Id.* at 918 (citing *Hamilton v. Lanning*, 560 U.S. 505 (2010) (holding disposable income is calculated pursuant to section 1325(b)(2), absent unusual circumstances)).

Courts consistently hold that above-median income chapter 13 debtors may take the standard deductions, notwithstanding their actual expenses. *In re Owsley*, 384 B.R. 739, 743 (Bankr. N.D. Tex. 2008); *see, e.g.*, *In re Smith*, 549 B.R. 188, 191 (Bankr. N.D. Miss. 2016) (confirming an above-median income chapter 13 plan where the debtor's projected disposable income was negative and the plan provided for no distribution to general unsecured creditors, despite the fact that debtor's Schedules I and J reflected that the debtor had surplus monthly net income). The Prices may, therefore, choose to spend less than that allowed by the IRS guidelines and use the extra income for something important to them. With those savings, they may "spend it, save it, or invest it in a whole life insurance policy, but their 'projected disposable

---

the Prices are above-median income debtors; the statute *requires* the mechanical, form-driven calculation of disposable income (except for certain secured debt payments, *In re Gracia*, 2018 WL 3726157, at *3). Such a comparison may have some bearing on the good faith analysis, however.

6

income,' as determined by section 1325(b)(1)(B), does not change because of that decision" and their plan still meets the requirements of confirmation. *In re Uhlig*, 504 B.R. at 920–21. The Prices' chapter 13 plan meets the requirements of § 1325(b).

**B.**

**Good Faith Requirement**

Section 1325(a)(3) requires that the debtor's chapter 13 plan be "proposed in good faith." Though arguably not explicit under the statute, good faith is construed as a necessary condition for confirmation of a plan. *See, e.g.*, *Pub. Fin. Corp. v. Freeman*, 712 F.2d 219, 221 (5th Cir. 1983). And good faith is determined under the totality of the debtor's circumstances. *Id.*

The parties here are disputing whether the debtors' adherence to § 707(b)(2)(A) and (B) (and Form 122C-2) is sufficient under the circumstances—i.e., their retention of three whole life insurance policies—to satisfy the good faith requirement. As stated, § 1325(a)(3) requires good faith—but good faith is not textually a part of the disposable income requirement of subsection (b). Similarly, § 707(b)(3) states that even when a debtor satisfies subsection (b)(2)(A)—the mathematically derived formula (using prescribed expenses) for determining if a chapter 7 filing is abusive—the court must also consider whether the debtor's filing is otherwise abusive or made in bad faith. *In re Gracia*, 2018 WL 3726157, at *3; *In re Owsley*, 384 B.R. at 750 ("compliance with section 1325(b)(3) and section 707(b)(2)(A) is not dispositive of good faith because good faith embraces more than just lawful compliance with those sections.").

Where the court considers both technical compliance with § 1325(b) and good faith under the totality of the circumstances, "the sufficiency of the assets devoted to the plan is not a basis for a finding of lack of good faith under § 1325(a)(3), unless there is a showing of some sort of manipulation, subterfuge or unfair exploitation of the Code by the debtor." *In re Williams*, 394

7

B.R. 550, 572 (Bankr. D. Colo. 2008). Good faith is meant to protect the integrity of the bankruptcy process and prevent a debtor from intentionally exploiting the bankruptcy process to delay creditors or achieve an improper purpose. *In re Stanley*, 224 F. App'x 343, 346 (5th Cir. 2007). Although a plan's technical compliance with the Code is presumed to be asserted in good faith, the presumption of good faith may be negated by aggravating circumstances. *In re Owsley*, 384 B.R. at 750. Put another way, a plan is not proposed in bad faith "simply because of the ability to pay more than the means test result. There must be something else to trigger a lack of good faith in proposing a plan." *In re James*, 379 B.R. 903, 908 (Bankr. D. Neb. 2007). A court should therefore rarely find bad faith when a debtor's proposed plan complies with § 1325(b). *In re Devilliers*, 358 B.R. 849, 867 (Bankr. E.D. La. 2007). Without something more, debtors "are not in bad faith merely for doing what the Code permits them to do." *In re Ragos*, 700 F.3d 220, 227 (5th Cir. 2012).

The trustee proffers that a chapter 13 plan is per se bad faith where the debtor proposes to retain a whole life insurance policy, even where the expense is not included as a deduction for their disposable income. But this result is not supported by statute or case law. *See, e.g.*, *In re Rudmose*, No. 10-74514, 2010 WL 4882059, at *7 (Bankr. N.D. Ga. Nov. 8, 2010) (the court declined to find that the purchase of whole life insurance was per se abusive in chapter 7); *In re Mauer*, No. 09-32604, 2009 WL 2461380, at *4 (Bankr. N.D. Ohio Aug. 10, 2009) (finding that a whole life insurance policy was a reasonable expense in a chapter 7 case, while a more expensive term life insurance policy was unreasonable). Specifically, this Court has previously observed that whether or not a chapter 13 plan is proposed in good faith is a question of fact for which the debtor bears the burden of proof, and, as such, "courts are reluctant to define any per se rules applicable to assessing a good faith attempt to propose a plan." *In re Gonzales*, No. 17-

50150, 2018 WL 501332, at *2 (Bankr. N.D. Tex. Jan. 19, 2018). Although the Prices may have more disposable income than calculated on their Form 122C-2, without any aggravating factors to suggest that they are seeking to manipulate the bankruptcy process, there cannot be a finding of bad faith.

The trustee's objection to confirmation is misguided. His objection focuses on the classification of whole life insurance under IRS guidelines and argues that it is not reasonably necessary because it embodies a savings component; he admits that he would not object to term policies as they would be allowable "other-necessary" expense items. But such policies would be allowable expenses that are deducted from the Prices' current monthly income, thus decreasing the projected disposable income for unsecured creditors. The trustee argues that the Prices are saving at the expense of creditors by maintaining whole life insurance policies. But if the Prices obtained term life policies, the amount of the premiums would be made at the expense of those same creditors. Their plan is *not* proposed in bad faith where it pays *more* to unsecured creditors by maintaining the whole life insurance policies.

The Prices have proposed their chapter 13 plan in good faith. Their plan complies with the standards for confirmation under the Code; there is no evidence that their intent to maintain whole life insurance policies manipulates the bankruptcy process.

### C. HAVEN Act

Additionally, at the hearing, debtors' counsel brought up the potential applicability of a new bankruptcy law. Mr. Price receives $964.36 in VA disability payments each month. At the time of this bankruptcy filing, June 21, 2019, the HAVEN Act had only been introduced in the House. The HAVEN Act, or the Honoring American Veterans in Extreme Need Act of 2019, is a law that exempts from the calculation of monthly income certain benefits paid by the

Department of Veterans Affairs and the Department of Defense. This law amended 11 U.S.C. § 101(10A) to exclude from the definition of current monthly income certain payments made under title 10, 37, or 38 of the United States Code in connection with a disability, combat-related injury or disability, or death of a member of the uniformed services. On July 23, 2019, the HAVEN Act passed the House. On August 1, 2019, the bill passed the Senate. A few weeks later, on August 23, 2019, the HAVEN Act was signed into law by the President. The Act was effective immediately upon enactment.

There is a strong argument that this law applies to pending chapter 13 cases with unconfirmed plans. While no court has said so, experts have argued this interpretation. *See Not Fake News: Congress Enacts New, Sensible Bankruptcy Reform*, 38 Am. Bankr. Inst. J. 10, 77 (2019) (excerpts from an ABI Webinar where Kristina Stanger, a practicing bankruptcy attorney in Iowa and a member of ABI's Veterans Affairs Task Force, stated that since § 1325(b)(1)(B) addresses confirmation plans and relies on the definition of disposable monthly income, the HAVEN Act has immediately changed the meaning of disposable monthly income to exclude disabled veterans' benefits and should be applicable to pending chapter 13 cases with unconfirmed plans). Additionally, on October 1, 2019, new forms for bankruptcy became effective that conform with the HAVEN Act changes, including Official Form 122C-1 (current monthly income).

Here, Mr. Price receives payments that are excluded from current monthly income calculations under the new law. While the Court need not decide whether the HAVEN Act applies to pending chapter 13 cases with unconfirmed plans, the inclusion of such payments, where modification is possible, weighs in favor of the debtors' good faith.

## Conclusion

Under § 1325(b)(1)(B), (b)(2), and (b)(3) of the Bankruptcy Code, the Prices' plan, to be confirmed, must meet the expense standards set forth in § 707(b)(2)(A) and (B). Form 122C-2, the use of which is mandated by the Judicial Conference of the United States under Rule 9009 and prescribed by Rule 1007(b)(6), serves to implement § 707(b) (in accordance with § 1325(b)(3)) and thus incorporates the mandated IRS National and Local Standards for the debtors' calculation of disposable income. The calculation "is not only the starting point in calculating above-median-income Chapter 13 debtor's 'projected disposable income,' but in most cases, it is determinative." *In re Hall*, 559 B.R. 463, 469 (Bankr. S.D. Tex. 2016) (citation omitted).

The Code *prescribes* how disposable income must be determined. The Prices' plan complies with the statute and is thus presumptively proposed in good faith. The good faith presumption is rebuttable because "there may be times when debtors commit so little income to repaying creditors, relative to their true ability to pay, that their plans show an intent to manipulate the Code and not to make a good faith effort at repayment." *In re Uhlig*, 504 B.R. at 921. Such is not the case here. The Prices have met their burden of proof; their plan is proposed in good faith.

The Court overrules the trustee's objection to the Prices' chapter 13 plan and approves confirmation.

### End of Memorandum Opinion ###